UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

TERRY TUCKER, TERRY C. TARBELL,
JOSEPH B. HUFSCHMITT, THOMAS B.
DONNER, ROGER NESBITT,
HOWARD STONE, ALEXANDER ROMAN
and BRENTON NESBITT,

                Plaintiffs,                **REPORT AND RECOMMENDATION**

  v.

                                         21-CV-4444 (JS) (ST)

IAN PARKER and MARINA PARKER,
                Defendants.
-----------------------------------------------------------X

**TISCIONE, United States Magistrate Judge:**

Terry Tucker, Terry C. Tarbell, Joseph B. Hufschmitt, Thomas B. Donner, Roger Nesbitt, Howard Stone, Alexander Roman, and Brenton Nesbitt (the "Plaintiffs") brought this action alleging securities fraud and fraudulent conveyance seeking damages and declaratory relief. Before this Court is a motion by Ian Parker and Marina Parker (each a "Defendant" and collectively "Defendants") to dismiss Plaintiff's amended complaint for failure to state a claim. For the reasons below, I recommend Defendants' motion be DENIED.

## BACKGROUND

Defendant Ian Parker was, at the time of the events giving rise to this dispute, the chief executive officer (the "CEO") and individual in control of a private investment fund known as International Metal Trading, LLC ("IMT"). Pl. Op. Br. at 2, ECF No. 14. IMT distributed a subscription package to potential investors including documents such as a private placement memorandum, subscription agreement, preferred units purchase agreement, and a power point

1

presentation (the "offering documents") with the purpose of raising funds for IMT's investment activities. *See id*.

According to Plaintiffs, these offering documents contained numerous misrepresentations of fact. This Court will not detail every alleged misrepresentation detailed in Plaintiffs' amended complaint but by way of example the offering documents contained the following:

(1) IMT falsely asserted it intended to use net proceeds for commodity trading and hedging;

(2) that transactions would be collateralized at least 120% of value;

(3) that all metals bought and sold were hedged through futures markets; and

(4) that upon the fourth anniversary after the fund's closing, investors would be entitled to redeem at least 50% of the ownership interest in an amount equal to the purchase price plus all accrued but unpaid dividends. *See id* at ¶¶ 26-53; Pl. Opp. Br. at 2, ECF No. 14.

Each of the Plaintiffs in this action allege they were solicited by IMT sales representatives and, in reliance on the above representations and others, signed the offering documents and forwarded one or more checks as their investments in IMT. Pl. Opp. Br. at 2, ECF No. 14.

However, IMT and Defendant Ian Parker allegedly had no intent of investing Plaintiffs' funds. Plaintiffs allege that Ian Parker used at least hundreds of thousands of the total 3 million dollars raised to pay off debts owed to other entities. *Id* at 3. Furthermore, Plaintiffs allege Ian Parker transferred hundreds of thousands of dollars to his wife, Marina Parker, without fair consideration and for Ian Parker's personal use. *Id*.

After the four-year anniversary of the fund's closing, the owners of more than 50% of the ownership interest in IMT requested redemption of their investments. *Id* at 2. IMT refused

however, and Ian Parker told investors that the funds were "tied up in litigation." *Id* at 3. Ian Parker offered that Plaintiffs could exchange their interest in IMT to another entity controlled by him in exchange for a general release running in Ian Parker's favor. *Id* at 3-4.

The parties contest the validity of these releases.[1] Defendants have produced these releases with their motion and assert that in light of the releases, the Plaintiffs who agreed to them did not suffer any injury. Def. Br. at 10-13. ECF No. 13. Plaintiffs, in the amended complaint and in opposition to this motion, maintain that they never received fully executed agreements or proof that any transfer of interest occurred. Pl. Opp. Br. at 4, ECF No. 14. Plaintiffs maintain that the agreements are therefore invalid. *Id*. Plaintiffs commenced this action on August 6, 2021. Defendants filed this instant motion on November 16, 2022. The Honorable Joanna Seybert referred the motion to me for this Report and Recommendation.

## LEGAL STANDARD

When assessing a Rule 12(b)(6) motion to dismiss, a court must determine whether the complaint states a legally cognizable claim by making allegations that, if proven, would show that the Plaintiff is entitled to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). *Twombly* and *Iqbal* command that all elements of the Plaintiff's claim must be plausibly alleged in the complaint, such that the complaint contains more than "naked assertions," or allegations that amount to "sheer possibility," containing

---

[1] The Court details this factual dispute as it is necessary to provide recommendations below. However, on a motion to dismiss, this Court is bound to assume Plaintiffs' version of the facts is true. *Giambrone v. Meritplan Ins. Co.*, 13-CV-7377 (MKB) (ST), 2017 WL 2303980 at *3 (E.D.N.Y. Feb. 28, 2017).

3

instead "factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.*

In assessing a motion to dismiss under Rule 12(b)(6), the Court "must accept all factual allegations as true and draw all reasonable inferences in favor of the non-moving party." *Giambrone v. Meritplan Ins. Co.*, 13-CV-7377 (MKB) (ST), 2017 WL 2303980 at *3 (E.D.N.Y. Feb. 28, 2017) (internal quotation marks, citation omitted) (*adopted by Giambrone v. Meritplan Ins. Co.,* 13-CV-7377, 2017 WL 2303507 (E.D.N.Y. May 24, 2017)).

## DISCUSSION

Plaintiffs allege four counts in their amended complaint; securities violations pursuant to 15 U.S.C. §§ 78j(b), 78t(a) and 17 C.F.R. § 3401.10b-5, common law fraud, actual and constructive fraudulent conveyance, and for a declaratory judgment. Defendants filed this motion seeking dismissal of all counts. For the reasons discussed below, I recommend the motion to dismiss be DENIED.

**I.    Plaintiffs have Sufficiently Pled Their Claim of Securities Fraud.**

Section 10(b) of the Exchange Act provides that:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors. 15 U.S.C. § 78j(b).

4

Securities and Exchange Commission Rule 10b-5 further explains that "any manipulative or deceptive contrivance includes the following:

> [i]t shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, (a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security. 17 C.F.R. § 240.10b-5.

"To state a claim for relief under § 10(b) and Rule 10b–5, plaintiffs must allege that each defendant (1) made misstatements or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which plaintiffs relied; and (5) that plaintiffs' reliance was the proximate cause of their injury." *In re Livent, Inc. Securities Litigation*, 148 F. Supp 2d 331, 348 (S.D.N.Y. 2001).

Claims of securities fraud are subject to a heightened pleading standard under rule 9(b) of the Federal Rules of Civil Procedure. *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). Under Rule 9(b), a party must "state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b). This Circuit has interpreted rule 9(b) to require that a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 197 (2d Cir. 2013) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) (citation omitted)).

Furthermore, a claim of securities fraud must meet the scienter standard laid out by the Private Securities Litigation Reform Act (the "PSLRA") which requires that "the complaint

5

shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *ATSI Communications, Inc*, 493 F.3d at 99 (quoting 15 U.S.C. § 78u-4(b)(2)). "The plaintiff may satisfy this requirement by alleging facts (1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." *Id*.

Defendants specifically argue that Plaintiffs have failed to state "where and when" Defendant Ian Parker made alleged fraudulent statements. Ultimately, it appears Defendants reach this conclusion by taking an erroneously narrow view of which statements may rightfully be attributed to Defendant Ian Parker. Defendants zero in on paragraph sixty-six of the complaint, in which Defendant Ian parker is alleged to have "offer[ed] to exchange the plaintiffs' interest in IMT to another entity. . . . Ian Parker falsely represented that it was to the plaintiff's benefit to exchange the shares . . . ." Am. Compl. at ¶ 66, ECF No. 10. Defendants allege that this allegation fails to specify where and when Defendant Ian Parker made this representation to Plaintiffs.

However, this interaction was simply one in a series of multiple alleged misrepresentations made by IMT at Defendant Ian Parker's direction. As is clear in both Plaintiffs' briefing on this motion and the amended complaint, the offering documents contained a slew of allegedly false representation about IMT's investment strategy. *Id* at ¶ 73; *see also id* at ¶¶ 26-53 (alleging, among other things, that IMT falsely asserted it intended to use net proceeds for commodity trading and hedging, that transactions would be collateralized at least 120% of value, and that all metals bought and sold were hedged through futures markets); Pl. Opp. Br. at 5-7, ECF No. 14 (detailing same). Ian Parker was the CEO of IMT at this time and Plaintiffs

6

have alleged that he directed his sales representatives to prepare and disseminate these offering documents. Am. Compl. at ¶¶ 5,7, ECF No. 10. This is more than sufficient to establish the "where" element of these statements.

Furthermore, Plaintiffs' complaint details which of these documents containing alleged misrepresentations were presented to each Plaintiff and the specific dates on which each Plaintiff signed the documents and issued payments for their investment. Am. Compl. at ¶¶ 8-25; ECF No. 10. This Court has routinely found even approximate dates of alleged misrepresentations and fraudulently induced payments to be sufficiently particular to plead fraud. *See, e.g., In re Crazy Eddie Securities Litigation*, 812 F. Supp. 338, 349 (E.D.N.Y. 1993) (approximate dates of allegedly fraudulent mailings and wire communication sufficient to plead fraud with particularity).

Yet, Defendants fail to acknowledge these statements let alone explain why they are insufficient to sustain a claim of fraud. It is unclear whether Defendants simply failed to address these misrepresentations or instead omit them as to argue that Defendant Ian Parker may only be held liable for statements he made personally. Even reading Defendants brief in the latter context, this Circuit's precedent on controlling person liability is plainly satisfied in this instance as Defendant Ian Parker is alleged to be the CEO of IMT and ordered the creation of the offering documents containing alleged misrepresentations regarding IMT's investment strategy. *See Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 170 (2d Cir. 2000) (requiring controlling person be a "culpable participant" in the fraud); Am. Compl. ¶¶ 5-7, ECF No. 10 (describing Defendant Ian Parker's role as CEO of IMT). I therefore recommend this Court conclude that Plaintiff has sufficiently pled securities fraud.

## II.     Plaintiffs have Sufficiently Pled a Claim of Fraudulent Conveyance.

Plaintiffs' third count alleges both actual and constructive fraudulent transfer under Sections 276 and 273 of the New York Debtors and Creditors Law (the "NYDCL"), respectively. *See* Am. Compl. at ¶¶ 83-89, ECF No. 10. Section 276 requires that a plaintiff show "actual intent . . . to hinder delay or defraud either present or future creditors . . . ." NYDCL § 276; *see also United States v. Alfano*, 34 F. Supp. 2d 827, 848 (E.D.N.Y. 1999). While claims of actual fraudulent transfer must meet the heightened pleading standard of Rule 9(b), "[a]ctual intent need not be proven by direct evidence . . . . [T]he pleader is allowed to rely on badges of fraud to support his case." *Official Committee of Unsecured Creditors of Exeter Holding, Ltd. v. Haltman*, No. 13-CV-5475 (JS) (AKT), 2018 WL 1582293, at *10 (E.D.N.Y. Mar. 30, 2018) (internal quotations and citations omitted). Such badges of fraud include:

> lack or inadequacy of consideration, family, friendship, or close associate relationship between transferor and transferee, the debtor's retention of possession, benefit, or use of the property in question, the existence of a pattern or series of transactions or course of conduct after the incurring of debt, [ ] the transferor's knowledge of the creditor's claim and the inability to pay it . . . . [T]he general chronology of the event and transactions under inquiry, a questionable transfer not in the usual course of business, and the secrecy, haste, or unusualness of the transaction. *Id.* (internal quotations and citation omitted).

This Court views "transfers among family members [to] raise special concerns, and receive different scrutiny." *Perrone v. Amato*, No. 09-CV-316 (AKT), 2017 WL 2881136, at *28 (E.D.N.Y. July 5, 2017) (internal quotations omitted). "When assets are transferred between family members and where facts concerning the nature of the consideration are within the exclusive control of the transferee, the burden shifts to the transferee to prove the adequacy of the consideration." *Haltman*, 2018 WL 1582293 at *10 (quoting *Federal Nat. Mortg. Ass'n v. Olympia Mortg. Corp.*, No. 04-CV-4971 (NG) (MDG), 2006 WL 2802092, at *8 (E.D.N.Y.

8

Sept. 28, 2006) (internal quotations omitted). Furthermore, in the absence of fair consideration "[c]ourts view intrafamily transfers . . . as presumptively fraudulent." *Alfano*, 34 F. Supp. 2d at 845.

Plaintiffs have pled actual fraudulent transfer with sufficient particularity to shift the burden to Defendants. Plaintiffs have outlined several "badges of fraud" sufficient to support an inference of actual intent. Centrally, Plaintiffs allege these transfers were made from Ian Parker via IMT to his wife, Marina Parker. *See* Am. Compl. ¶ 58, ECF No. 10. These transfers were allegedly performed after IMT incurred debts with the Plaintiffs and with the knowledge that IMT would be rendered insolvent by doing so. *Id* at ¶¶ 59-61.

In reply, Defendants do not assert that these transfers were supported by fair consideration. Instead, Defendants merely assert that because the transfer between Defendants Ian Parker and Marina Parker were conducted via IMT and not Ian Parker personally, no intrafamily transfer occurred. Def. Reply Br. at 7, ECF No. 15. Ian Parker is alleged to have been CEO of IMT and in control of operations at the time these transfers occurred. *See* Am. Compl. ¶¶ 5-6, ECF No. 10. It is beyond question that an individual cannot avoid liability for fraudulent transfers merely by creating a corporate entity to channel such transfers through. *See Amusement Industry, Inc. v. Midland Avenue Associates, LLC*, 820 F. Supp. 2d 510, 529 (S.D.N.Y. 2011) (finding fraudulent conveyances between entities controlled by the same individual as well as entities controlled by related family members). "It would be odd to disallow a set-aside of" such transfers and doing so would "defeat the very purpose of the fraudulent conveyance statute." *Id.* As such, I recommend this Court find that Plaintiffs have adequately pled actual fraudulent transfer.

Even presuming Plaintiffs' claim of actual fraudulent transfer were insufficient, Plaintiff has successfully raised a claim of constructive fraudulent transfer. Under Section 273 of the NYDCL:

> Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regards to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

Insolvency is defined as a state where "the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." NYDCL § 271; *see also Alfano*, 34 F. Supp 2d at 844. Furthermore, insolvency is presumed when a transfer is made without fair consideration. *Alfano*, 34 F. Supp 2d at 845. Lastly, a plaintiff is not required to plead constructive fraudulent transfer with specificity and instead must meet the general requirements of Rule 8. *Haltman*, 2018 WL 1582293 at *10.

Defendant maintains that even under Rule 8, Plaintiffs' complaint is insufficient. Defendants allege that Plaintiffs' statements under count three are simply conclusory and therefore unable to state a claim. Def. Reply Br. at 8, ECF No. 15. In doing so, Defendants ignore Plaintiffs' allegations that IMF transferred hundreds of thousands of dollars to Marina Parker without fair consideration rendering IMF insolvent. Am. Compl. ¶¶ 58, ECF No. 10. Plaintiffs further allege that Ian Parker knew such transfers would render IMF insolvent, that Ian Parker falsely represented that the funds were "tied up in litigation" that prevented payouts, and attempted to secure releases on IMF's debts in exchange for interests in other entities. *See id* at ¶¶ 59-66. These allegations are more than sufficient to state a claim for constructive fraudulent transfer under the more relaxed Rule 8 standard.

Furthermore, Plaintiffs have adequately alleged that these transfers took place without fair consideration. *See id* at ¶ 58. This is sufficient to generate a presumption that such transfers

rendered IMT insolvent. The burden of rebutting this presumption falls on the transferee, who must show either adequate consideration or continued solvency after the transfer. *See Haltman*, 2018 WL 1582293 at *10. At this stage, Defendants have alleged neither adequate consideration nor continued solvency. As such, Plaintiffs' claims for constructive fraudulent transfers should not be dismissed.

### III. The Validity of the Release Agreements between Plaintiffs and IMF is a Contested Factual Issue and so Dismissal is Improper at this Stage.

Defendants further argue that the complaint must be dismissed with regards to those Plaintiffs who allegedly entered into releases with Ian Parker in exchange for interests in other entities owned by him. Def. Br. at 12-13, ECF No. 13. According to Defendants, because Plaintiffs invoke these release agreements in the Amendment Complaint, Defendants are entitled to rely on them in their opposition. *Id* at 11. Because these agreements purport to release Ian Parker from liability in exchange for shares in additional entities, these Plaintiffs have suffered no damages. *Id*. Defendants' argument fails to acknowledge, however, that Plaintiffs invoked these agreements in their amended complaint to allege that such agreements were never consummated and that these Plaintiffs never received executed transfer documents. Am. Compl. ¶¶ 66-70, ECF No. 10. These allegations are central to Plaintiff's fourth count which seeks a declaratory judgment that such releases are void. *Id* at ¶ 92.

It is axiomatic that this Court is bound to accept all factual allegations in a complaint as true at this stage. *Rombach v. Chang*, 355 F.3d 164, 169 (2d Cir. 2004). Defendants' argument essentially asks this Court to disregard this standard and accept these releases as valid. This Court should decline to do so. The validity of these agreements is a contested factual issue central to one of Plaintiffs' claims. As such, this Court recommends that dismissal be denied.

11

IV. **Plaintiff's State Law Claims are Subject to this Court's Pendent Jurisdiction as the Claims Arise Out of a Common Nucleus of Operative Fact.**

Defendants argue that this Court should decline to exercise pendent jurisdiction over Plaintiffs' state law claims. Def. Br. at 13-14, ECF No. 13. This argument is based solely on a presumption that, in Defendants' view, Plaintiffs' federal claim should be dismissed. *Id*. Defendants do not raise any argument on the merits suggesting that pendent jurisdiction is improper in this case. Because Plaintiffs' federal claims remains and because that federal claim and Plaintiffs' state law claims "derive from a common nucleus of operative fact," exercising pendent jurisdiction over Plaintiff's state law claims is proper. *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966).

## CONCLUSION

For the reasons discussed herein, I respectfully recommend that Defendants' motion to dismissed be DENIED in its entirety.

## OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*,

No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also* *Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

_____/s/_____  Steven Tiscione
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Central Islip, New York
       June 29, 2023