FILED
CLERK

9/26/2023 12:46 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------X
TERRY TUCKER, TERRY C. TARBELL,
JOSEPH B. HUFSCHMITT, THOMAS B.
DONNER, ROGER NESBITT, HOWARD                MEMORANDUM & ORDER
STONE, ALEXANDER ROMAN and                   21-CV-4444(JS)(ST)
BRENTON NESBITT,

                    Plaintiffs,

     -against-

IAN PARKER and MARINA PARKER,

                    Defendants.
-------------------------------X
APPEARANCES
For Plaintiffs:      Steven G. Legum, Esq.
                     170 Old Country Road
                     Mineola, NY 11501

For Defendants:      Jason R. Mischel, Esq.
                     201 East 19th Street 5L
                     New York, NY 10003

SEYBERT, District Judge:

          Terry Tucker, Terry C. Tarbell, Joseph B. Hufschmitt,

Thomas B. Donner, Roger Nesbitt, Howard Stone, Alexander Roman,

and Brenton Nesbitt (collectively, the "Plaintiffs"), commenced

this securities fraud and fraudulent conveyance action against Ian

Parker and Marina Parker (collectively, the "Defendants"). (See

generally Am. Compl., ECF No. 10.)  Defendants filed a motion to

dismiss the Amended Complaint pursuant to Federal Rule of Civil

Procedure ("Rule") 12(b)(6) and (h)(3), which the Court referred

to the Honorable Steven Tiscione for a Report and Recommendation

("R&R").  (See Mot., ECF No. 13; R&R, ECF No. 18.)  In the R&R,

Judge Tiscione recommended denying Defendants' motion in its entirety. (See R&R at 12.)

Defendants filed timely objections to the R&R, which Plaintiffs oppose. (Defs. Obj., ECF No. 19; Pls. Resp., ECF No. 20.) After obtaining leave from the Court, Defendants also submitted a reply. (See July 21, 2023 Elec. Order; Defs. Reply Obj., ECF No. 22.) For the following reasons, Defendants' objections are OVERRULED, the R&R is ADOPTED, and Defendants' motion to dismiss is DENIED.

## BACKGROUND

Judge Tiscione issued his R&R on June 29, 2023. Defendants do not specifically challenge the "Background" section of the R&R, therefore, the Court incorporates herein by reference Judge Tiscione's summary of the facts and posture of this case. See Sali v. Zwanger & Pesiri Radiology Grp., LLP, No. 19-CV-0275, 2022 WL 819178, at *1 (E.D.N.Y. Mar. 18, 2022). The Court recites only those facts necessary to resolve Defendants' objections to the R&R.

Ian Parker was the Chief Executive Officer ("CEO") of a private investment fund known as International Metal Trading, LLC ("IMT"). (R&R at 1.) Marina Parker is his wife. (Id. at 2.) Plaintiffs allege that offering documents distributed by IMT to potential investors contained numerous misrepresentations for the purpose of raising funds for IMT's investment activities. (Id.

at 1-2.)   By way of example, the R&R highlighted four such misrepresentations contained in the offering documents:

> (1) IMT falsely asserted it intended to use net proceeds for commodity trading and hedging; (2) that transactions would be collateralized at least 120% of value; (3) that all metals bought and sold were hedged through futures markets; and (4) that upon the fourth anniversary after the fund's closing, investors would be entitled to redeem at least 50% of the ownership interest in an amount equal to the purchase price plus all accrued but unpaid dividends.

(Id. at 2.)

Rather than investing the raised funds for their intended purpose, Plaintiffs allege that Ian Parker used hundreds of thousands of dollars to pay off debts owed to other entities and transferred them to his wife for personal use. (Id.) After the four-year anniversary of the fund's closing, more than 50% of the ownership interest in IMT requested redemption of their investments. (Id.) IMT refused and Ian Parker told investors the funds "were tied up in litigation." (Id. at 3.) Ian Parker then offered that Plaintiffs could exchange their interest in IMT to another entity he controlled, "in exchange for a general release running in Ian Parker's favor." (Id.) The parties dispute the validity of the releases. (Id.)

Based on these allegations, the Amended Complaint asserts four causes of action: (1) securities fraud pursuant to 15 U.S.C. §§ 78j(b), 78t(a) and 17 C.F.R. § 3401.10b-5; (2) common

law fraud; (3) actual and constructive fraudulent conveyance; and
(4) a declaratory judgment rendering void any release agreements
executed between Plaintiffs and Ian Parker.   (See Am. Compl.
¶¶ 71-92.)  On November 16, 2022, Defendants filed their motion to
dismiss each of these claims.

By R&R dated June 29, 2023, Judge Tiscione recommended
denying Defendants' motion in its entirety.  First, Judge Tiscione
found that Plaintiffs sufficiently pled their claims rooted in
securities fraud.  Defendants argued that Plaintiffs failed to
state "where and when" Ian Parker made alleged fraudulent
statements; however, the R&R rejected this argument:

> Ultimately, it appears Defendants reach this
> conclusion by taking an erroneously narrow
> view of which statements may rightfully be
> attributed to Defendant Ian Parker.
> Defendants zero in on paragraph sixty-six of
> the complaint, in which Defendant Ian parker
> is alleged to have "offer[ed] to exchange the
> plaintiffs' interest in IMT to another
> entity. . . . Ian Parker falsely represented
> that it was to the plaintiff's benefit to
> exchange the shares . . . ." Am. Compl. at
> ¶ 66, ECF No. 10.  Defendants allege that this
> allegation fails to specify where and when
> Defendant Ian Parker made this representation
> to Plaintiffs.
>
> However, this interaction was simply one in a
> series of multiple alleged misrepresentations
> made by IMT at Defendant Ian Parker's
> direction.  As is clear in both Plaintiffs'
> briefing on this motion and the amended
> complaint, the offering documents contained a
> slew of allegedly false representation about
> IMT's investment strategy.  Id. at ¶ 73; see
> also id. at ¶¶ 26-53 (alleging, among other

things, that IMT falsely asserted it intended
to use net proceeds for commodity trading and
hedging, that transactions would be
collateralized at least 120% of value, and
that all metals bought and sold were hedged
through futures markets); Pl. Opp. Br. at 5-7,
ECF No. 14 (detailing same). Ian Parker was
the CEO of IMT at this time and Plaintiffs
have alleged that he directed his sales
representatives to prepare and disseminate
these offering documents.

Furthermore, Plaintiffs' complaint details
which of these documents containing alleged
misrepresentations were presented to each
Plaintiff and the specific dates on which each
Plaintiff signed the documents and issued
payments for their investment. Am. Compl. at
¶¶ 8-25, ECF No. 10. This Court has routinely
found even approximate dates of alleged
misrepresentations and fraudulently induced
payments to be sufficiently particular to
plead fraud. See, e.g., In re Crazy Eddie
Securities Litigation, 812 F. Supp. 338, 349
(E.D.N.Y. 1993) (approximate dates of
allegedly fraudulent mailings and wire
communication sufficient to plead fraud with
particularity).

(R&R at 6-7.) Further, the R&R concluded that Ian Parker, as CEO,

was responsible for ordering the creation of the offering documents

and may be liable under a "controlling person" theory of liability.

(Id. at 7.)

Next, the R&R found that Plaintiffs sufficiently pled a

claim of fraudulent conveyance, by way of either an actual or

constructive fraudulent conveyance. (Id. at 8-11.) Regarding an

actual fraudulent conveyance, the R&R found that the transfers

made from Ian Parker via IMT to his wife were "allegedly performed

after IMT incurred debts with the Plaintiffs and with the knowledge that IMT would be rendered insolvent by doing so," and "Defendants do not assert that these transfers were supported by fair consideration."[1]   (Id. at 9.)   With respect to a constructive fraudulent conveyance, similarly, Plaintiffs alleged that Ian Parker knew the transfers from IMF to his wife would render IMT insolvent, that he falsely represented the funds were "tied up in litigation" to prevent payouts, and that he attempted to secure releases on IMT's debts in exchange for interests in other entities.   (Id. at 10.)

Next, the R&R considered Defendants' argument that the claims by Plaintiffs who entered into releases with Ian Parker be dismissed.   (Id. at 11.)   As stated in the R&R, Plaintiffs seek to void these releases in their claim for declaratory relief and raised them "to allege that such agreements were never consummated and that [they] never received executed transfer documents."   (Id.) Because allegations in a complaint are accepted as true for purposes of a Rule 12 motion, the R&R rejected Defendants'

---

[1] Defendants also argued "no intrafamily transfer occurred" because the transfers were conducted via IMT and not Ian Parker personally. (R&R at 9.)  The R&R readily rejected this argument, noting "[i]t is beyond question that an individual cannot avoid liability for fraudulent transfers merely by creating a corporate entity to channel such transfers through."  (Id. (citing Amusement Industry, Inc. v. Midland Avenue Assocs., LLC, 820 F. Supp. 2d 510, 529 (S.D.N.Y. 2011)).)

argument, which in essence, asked the Court to accept the releases as valid despite Plaintiffs' claims to the contrary. (Id.)

Last, based upon the presumption that Plaintiffs' federal claim would be dismissed, Defendants argued the Court should decline to exercise supplemental jurisdiction. (Id. at 12.)  In light of the recommendation to maintain Plaintiffs' federal claim at this stage, Judge Tiscione found the continued exercise of supplemental jurisdiction over Plaintiffs' state law claims to be proper. (Id.)

DISCUSSION

I.   Legal Standard

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); see also FED. R. CIV. P. 72(b)(3). The district judge must evaluate proper objections de novo; however, where a party makes only conclusory or general objections, or simply reiterates the original arguments, the court reviews the report and recommendation strictly for clear error. See Locus Techs. V. Honeywell Int'l Inc., 632 F. Supp. 3d 341, 351 (S.D.N.Y. 2022); Pall Corp. v. Entegris, Inc., 249 F.R.D. 48, 51 (E.D.N.Y. 2008) (same); Thomas v. City of N.Y., Nos. 14-CV-7513, 16-CV-4224, 2019 WL 3491486, at *4 (E.D.N.Y. July 31, 2019) ("Objections seeking to relitigate arguments rejected by the magistrate judge do not constitute proper objections, and, as a result, are subject

to clear error review"); Urgent One Med. Care, PC v. Co-Options, Inc., No. 21-CV-4180, 2022 WL 4596754, at *5 (E.D.N.Y. Sept. 30, 2022) ("General objections, or 'objections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original papers will not suffice to invoke de novo review'" (quoting Owusu v. N.Y.S. Ins., 655 F. Supp. 2d 308, 312-13 (S.D.N.Y. 2009) (cleaned up)); see also Phillips v. Reed Grp., 955 F. Supp. 2d 201, 211 (S.D.N.Y. 2013) ("In the event a party's objections are conclusory or general, or simply reiterate original arguments, the district court . . . reviews the Report and Recommendation for clear error.").

## II.  Analysis

        Defendants' objections to the R&R are three-fold: (1) the R&R failed to address Defendants' documentary evidence that demonstrates Plaintiffs "suffered no actual damages"; (2) the R&R failed to acknowledge Defendants' argument that "each and every allegation made by Plaintiffs regarding fraudulent statements" did not state "where and when" the statements were made; and (3) when ruling on the fraudulent conveyance claim, the R&R misapplied Official Committee of Unsecured Creditors of Exeter Holding, Ltd. v. Haltman, No. 13-CV-5475, 2018 WL 1582293 (E.D.N.Y. Mar. 30, 2018). (Defs. Obj. at 2-3.)  Each of these arguments were previously raised by Defendants in their underlying motion, as

8

acknowledged by Defendants in their objections.  (See id. at 11-14 (repeating arguments concerning actual damages and supporting documentation as "summarily argued" "in the MOL"); id. at 15 (repeating arguments that the Amended Complaint does not plead "where and when" fraudulent statements were made, "as argued in the MOL and Reply MOL"); id. at 17-19 (repeating arguments concerning fraudulent conveyance requirements "[a]s argued in the MOL and Reply MOL").)  As such, the portions of the R&R these objections target are reviewed for clear error.

Beginning with Defendants' first objection, Defendants argue Judge Tiscione ignored the documentary evidence they submitted, and that such evidence shows "Plaintiffs Tucker, RNesbitt, BNesbitt, Tarbell and Donner" suffered no actual damages because they received shares in Healixa, Inc. in exchange for their IMT shares.  (Id. at 14.)  Although the R&R acknowledged the release agreements, Defendants claim the R&R overlooked "the books and records of the stock transfer agent of Healixa, Inc.," which show that these Plaintiffs "each received their respective allotment of shares as provided for" in the releases. (Defs. Reply Obj. at 2.)

This objection is unpersuasive and overlooks Plaintiffs' allegations (as cited in the R&R) that show Plaintiffs "[n]ever received executed transfer documents and never received any documents to effectuate any transfer of stock as required." (See

Am. Compl. ¶¶ 68-70; see also R&R at 11 ("Defendants' argument fails to acknowledge . . . these agreements were never consummated and that these Plaintiffs never received executed transfer documents.").)  Further, the R&R explicitly considered Defendants' argument that, based upon these agreements, "Plaintiffs have suffered no damages." (See R&R at 11.)  In essence, Defendants ask the Court to convert their Rule 12 motion to a motion for summary judgment and conclude not only that the releases are valid, but that these books and records, which consist of account statements that post-date the commencement of this litigation, purportedly show the transferred Healixa shares are valued such that no damages were sustained by Plaintiffs.  In its discretion, the Court declines to convert Defendants' motion into one for summary judgment (see Basile v. Levittown United Tchrs., 17 F. Supp. 3d 195, 202-03 (E.D.N.Y. 2014)), and finds that Defendants' ex-post attempt to cure the losses Plaintiffs sustained at the time they were allegedly fraudulent induced to invest in IMT is inappropriate for reconciliation at the motion to dismiss stage.  Accordingly, Defendants' first objection is OVERRULED.

Turning to their second objection, Defendants argue the Amended Complaint does not sufficiently plead the "when and where" elements of all of the alleged fraudulent statements, and that the R&R narrowly considered this "when and where" argument towards

only one of the alleged misstatements.  (See Defs. Obj. at 15-16.)
To wit, Defendants submit that their underlying motion papers
challenged the sufficiency of Paragraphs 27, 29, 31, 33, 35, 37,
39, 41, 43, 45, 47, 49, 51, 53-57, 63-67, 70-82, and 90, and that
the R&R considered only Paragraph 66.  (Id. at 15; see R&R at 6
(citing Am. Compl. ¶ 66).)    This objection completely
mischaracterizes the contents of the R&R.

As quoted above (see supra at 4), in reviewing
Defendants' underlying motion papers, Judge Tiscione found that
Defendnats "zero in" on Paragraph 66, which pertains to Ian
Parker's offer to exchange Plaintiffs' interests in IMT to another
entity and the false representation that it was to Plaintiffs'
benefit to make this exchange. (R&R at 6.)  The very next paragraph
of the R&R explicitly states that "this interaction was simply one
in a series of multiple alleged misrepresentations," and then
references additional misstatements contained in the offering
documents "alleging, among other things, that IMT falsely asserted
it intended to use net proceeds for commodity trading and hedging,
that transactions would be collateralized at least 120% of value,
and that all metals bought and sold were hedged through futures
markets." (Id. (citing Am. Compl. ¶¶ 26-53, 73).)  As stated in
the R&R, the Amended Complaint "details which . . . documents
containing alleged misrepresentations were presented to each
Plaintiff and the specific dates on which each Plaintiff signed

11

the documents and issued payments for their investment." (Id. at 7.) Accordingly, the Court agrees with Judge Tiscione that the Amended Complaint sufficiently pleads and identifies the alleged misrepresentations, and Defendants' second objection is OVERRULED.

In their third objection, Defendants argue the R&R erred in its application of Haltman, a previous decision by this Court, to Plaintiffs' fraudulent conveyance claim. (Defs. Obj. at 17-21.) In Haltman, the Court held that to demonstrate intent for a claim of actual fraudulent conveyance, inter alia, a plaintiff must "specify the property that was allegedly conveyed, the timing and frequency of those allegedly fraudulent conveyances, [and] the consideration paid." Haltman, 2018 WL 1582293, at *9 (alteration in original) (quoting In re M. Fabrikant & Sons, Inc., 394 B.R. 721, 733 (Bankr. S.D.N.Y. 2008)). The Court further stated that "[a]ctual intent need not be proven by direct evidence, but may be inferred from the circumstances surrounding the allegedly fraudulent transfer," such as "the badges of fraud." Id. at 10 (quoting Fed. Nat'l Mortg. Ass'n v. Olympia Mortg. Corp., No. 04-CV-4971, 2006 WL 2802092, *9 (E.D.N.Y. Sept. 28, 2006)).

> Badges of fraud include "lack or inadequacy of consideration, family, friendship, or close associate relationship between transferor and transferee, the debtor's retention of possession, benefit, or use of the property in question, the existence of a pattern or series of transactions or course of conduct after the incurring of debt, [ ] the transferor's knowledge of the creditor's claim and the

12

> inability to pay it," <u>Olympia</u>, 2006 WL
> 2802092, at *9, "the general chronology of the
> event and transactions under inquiry," "a
> questionable transfer not in the usual course
> of business," and "the secrecy, haste, or
> unusualness of the transaction," <u>In re Saba
> Enterprises, Inc.</u>, 421 B.R. 626, 643 (Bankr.
> S.D.N.Y. 2009). While it is generally the
> plaintiff's burden to prove that the transfer
> was fraudulent, when assets are transferred
> between family members and "where facts
> concerning the nature of the consideration are
> within the exclusive control of the
> transferee, the burden shifts to the
> transferee to prove the adequacy of the
> consideration." <u>Olympia, 2006 WL 2802092</u>, at
> *8 (citing United States v. McCombs, 30 F.3d
> 310, 324 (2d Cir. 1994)).

<u>Id.</u>

Defendants focus on the language of <u>Haltman</u> that states

a plaintiff must allege with specificity the property conveyed,

the timing and frequency of the payments and the consideration

paid, and argue the R&R erred because the Amended Complaint here

does not meet that standard. The Court disagrees and finds no

clear error in Judge Tiscione's recommendation with respect to

Plaintiff's actual or constructive fraudulent conveyance claims.

As to actual fraudulent conveyance, the R&R acknowledged that

Plaintiffs alleged Ian Parker, via IMT, transferred hundreds of

thousands of dollars to his wife <u>after</u> IMT incurred debts to

Plaintiffs which rendered the company insolvent. (<u>See</u> R&R at 8-9.)

Then as to constructive fraudulent conveyance, in addition to those

allegations, the R&R noted Ian Parker's allegedly false

13

representations that Plaintiffs' funds were "tied up in litigation" and his attempts to secure releases on IMT's debts. (See id. at 10.)

It is unquestionable that under the circumstances of this case, the badges of fraud are present with respect to the alleged fraudulent conveyance to Marina Parker. And curiously, nowhere in their objections do Defendants even mention the badges of fraud, let alone attempt to justify the circumstances of the alleged conveyance to Marina Parker to mitigate any appearance of the badges of fraud. Accordingly, Defendants' third objection is OVERRULED.

<u>CONCLUSION</u>

For the stated reasons, **IT IS HEREBY ORDERED** that Defendants' objections are OVERRULED, the R&R is ADOPTED, and Defendants' motion to dismiss is DENIED. Accordingly, this matter is respectfully referred back to Judge Tiscione to oversee discovery.

**SO ORDERED.**

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: September 26, 2023
       Central Islip, New York

14